in this case. I would like to reserve two minutes for my rebuttal argument. The first issue, Your Honors, that I would like to bring to this Court's attention is the one sentencing enhancement that the District Judge declined to apply. There was a two-level enhancement for material involving a vulnerable victim. The basis for that enhancement  The second enhancement was a two-level enhancement for material The District Judge declined to impose that enhancement. He found and this is a rough quote, I'm not satisfied that this is images of an actual child. Your Honors, the government provided no more and no less evidence at the sentencing hearing to support that enhancement than it did to support any of the three sentencing enhancements that are in dispute in this case. The five-level enhancement for possession of more than 600 images, the four-level enhancement for material involving sadistic and masochistic conduct, and the two-level enhancement for possession of material involving a prepubescent minor. It is that internal inconsistency, that appearance of arbitrariness that should concern this Court. The case we cited on that issue is Garcia-Guisat. It's an opinion authored by Judge Fletcher about 11 years ago. And it gets to I'm not sure I follow the logic of your argument. If the Court determined that one or two or a handful of the images were not of real children, I don't understand how that necessarily implies that the remainder are not when there was evidence presented concerning a sample but a number of them as being of actual child victims. And I agree, Your Honor. It doesn't necessarily follow that if the judge found one image not to be a depiction of an actual child, then necessarily all of them don't. What I am saying is the evidence supporting those enhancements was identical. Now, there was evidence, Your Honor, and you are correct, at the sentencing hearing that there were images of actual children. And didn't he also concede this at the plea hearing? What the defense attorney at the plea hearing conceded was that if the judge was not going to make a specific determination whether these images contained real children, in other words, if he was not going to hold the government to its burden by proving they contained depictions of actual children, by going to the National Center for Missing and Exploited Children, making that organization do its analysis, finding images that in fact contained known victims, if the Court was not going to require the government to do that to sustain its burden, that the universe of images that were found on Mr. Van Allsburg's computer, he conceded, the defense attorney conceded, that those images would support those enhancements. But he did not concede that latter issue, that he did not concede that the district court shouldn't hold the government to its burden of proving those images contained depictions of real children. And I want to be clear about that to answer both Judge Graber and Judge Fletcher, that there were images that the National Center for Missing and Exploited Children found to be images of real children, of known victims. There weren't 7,000 of them. There weren't 600 of them. There weren't even 27 of them, as the FBI expert testified on direct examination. He conceded during cross-examination that there were no more than 14. But can you use sampling? I mean, you've got 7,000. You take a bunch of those and you find that a certain percentage of them can be shown to be real children. Can't you extrapolate that for purposes of preponderance of the evidence in sentencing? Two answers, Your Honor. First, to do so, that extrapolation would be an inference. You infer that because the smaller sample contains some number of images of real children, that the larger sample must contain the same or a similar proportion. An inference is not evidence. An inference is not evidence at a sentencing hearing. It's not evidence at a criminal trial. Now, I'm glad that Your Honor brought up this issue of the preponderance of the evidence, because that is plainly the standard that the district judge applied at the sentencing hearing. He applied a preponderance of the evidence standard. And I think it is crystal clear, the second issue we raised in our brief, that that was an error of the law. Let me be sure I understand your answer to Judge Canvey. Is it your position that when there is a very, very large number of images in a case such as this, that sampling is not permitted because it requires that an inference be drawn of similarity? So sampling is out, they would have to examine all 7,000 images? I am not saying, Your Honor, that in every instance sampling is not a useful method, perhaps during an investigation, even at a sentencing hearing in some instances. But what I am saying – What's different about this if it's okay sometimes? Why isn't it okay here? Because the enhancement that the district judge applied, this five-level enhancement for the 600 images, possession of more than 600 images, the district judge had to apply a clear and convincing evidence standard when he did that. And I don't believe that a sampling, an inference that can be drawn from a smaller sample to the larger whole, I don't believe that that supports a clear and convincing evidence standard at sentencing. I take no position whether it might satisfy a preponderance standard. I don't know that I accept the clear and convincing argument. I think if it had a disproportionate effect on the sentence, you might require that. But I don't know that you require clear and convincing for a disproportionate effect on the guideline calculation when the district judge doesn't follow the guideline calculation, but gives a substantially lower sentence than the guidelines would call for. Well, two answers, Judge Canby. First, the guideline calculation, and this is a relevant issue under Jordan and under Valencia, the cases we cite, the guideline calculation in this case was more than twice the statutory maximum for the charge to which Mr. Van Allsburg pled guilty. So the judge had no choice but to sentence Mr. Van Allsburg to below the statutory or below the guidelines. He had no choice on that, but he didn't have to go below the statutory maximum. He didn't have to go below the statutory maximum, but the district judge is beholden to, not beholden to the guidelines. They are discretionary, as we all know. But an accurate calculation is a necessary requisite before the judge can accurately consult those guidelines. A district judge can't do a consultation with the guidelines if there is an incorrect calculation. And I think the standard that we articulate that we urge the Court to apply in this case is the correct one, and that is harmless error beyond any reasonable doubt. This panel has to be convinced that the district judge's error in application of the heightened, failing to apply the heightened standard, that that was harmless error beyond any reasonable doubt. And I don't think the government can sustain that burden in this case. Maybe the thrust of your argument is it would be almost impossible ever to show this, because most children who are victims in child pornography are not going to be able to be identified. Nobody has found them yet. So it's always going to be a small percentage that could be identified. Well, I don't know that that's the case, Your Honor, because, in fact, in this case, the sampling that was submitted to NCMEC was a relatively small sample, as Judge Graber said, and they, the organization, was able to identify a substantial percentage of that sampling. That involved identifiable, identified children. So I don't think it's the case that it's impossible. In fact, the government did do the work in this case with respect to that small sampling. It didn't do the work with respect to the larger universe, and yet it urged the district court to apply this – well, it urged the district court to apply the statutory maximum in this case. In a case where nobody disputed that Mr. Van Allsburg possessed images, never created child pornography, never produced any child pornography, never had any inappropriate contact with children, it urged the district court to impose a statutory maximum based on the work that it did, which, in our view, was plainly insufficient. I'd like to reserve the remainder of my time for rebuttal. Thank you. You may do that. Good morning, Your Honors. May it please the Court. My name is Mary Jean Chan, and I represent the United States in this appeal. The problem with the defendant's argument is that he tries to restrict the universe of real children, which child pornography has to portray in order to qualify as child pornography, to a smaller subset of children who are actually identified and interviewed. And as Judge Canvey noted previously, that is a much smaller subset of the universe of children who – of real children. That is not a requirement in the statute for child pornography. It is not a requirement in the sentencing guidelines. It's not a requirement in any of the case law that this Court has cited. In fact, directly to the contrary. In United States v. Salcido, this Court recognized that the image itself is generally sufficient to determine whether the child that is depicted is real and actual or not, and that there is universal agreement among the circuits to that point. In addition, U.S. v. Williams, the Supreme Court case that is cited repeatedly by the defendant, supports this position, stating that although Congress is concerned that eventually virtual technology will make it virtually impossible to distinguish a virtual image from a real child, that there is no evidence that that is the case right now. Quote, there is no substantial evidence that any of the child pornography images being prohibitively expensive. So – I suppose the – I mean, the argument – your opponent's argument started with the judge saying, well, in this one, I don't think it's necessarily a real child. So he didn't – So exactly. That supports that, because by his visual inspection, he was able to determine that the child – the image of the baby sucking on the penis looked not like a real child, but perhaps morphed. And he was able to distinguish that from all the other images that he viewed. In total, he viewed at least one video of a child being raped, as well as numerous other images, still images. And he was able to determine that those were real images versus the one that he thought might be morphed. So – but that was not the only evidence that he had of these images being depictions of real children. He also had the testimony of the case agent, who testified that in Exhibit 1, the 700 images, for example, that was a representative sampling of the over 6,000 images taken from the defendant's computers were, quote, child pornography. And that among these, there were also 27 that were known victim images, as determined from the National Center for Missing and Exploited Children's Analysis. And that of the 27 images, 18 were of children who had actually been identified and interviewed. Again, referring to this Court's case in U.S. v. Salcido, in that case, there was not a full evidentiary hearing. But the Court also applied an enhancement, in that case also for a number of images, 600 or more, of child pornography, based on the trial testimony of the case agent as to the number of images of child pornography, among which only one video contained a child who had been interviewed, was actually identified. So there was much more evidence in this case than in Salcido, but that case, this Court found to be sufficient under, and that the court did not, the district court did not make a clear error. And again, I would like to remind this Court that what we're talking about here are factual findings that this Court reviews deferentially under the clear error standard. There was no such clear error. There was a full-blown evidentiary hearing. The Court took the step of actually reviewing the images, looking at them, as well as taking cross-examined testimony. And I would also like to also go back to the point that was made by this panel, which was that the defendant actually conceded to all the enhancements that are at issue on appeal today. At his plea colloquy, he admitted that the material that he possessed included both images of prepubescent minors as well as sadistic or masochistic conduct. Sotomayor, I thought he reserved the question of the 600 or more. He did, but he conceded as to the number of the images to the extent the district court rejected his view that the images that could be considered real children had to be limited to those who are identified by NCMEC, NCMEC being the National Center for Missing and Exploited Children. Specifically, he stated to the court, the issue for me is the utilization of non-identified images, that is, images of non-identified children. I don't feel that counsel, meaning government counsel, needs to prove the 600-plus. That's at Excerpts of Record 142. This is supported also by a letter that he sent to government counsel on September 25, 2008. This is at Excerpts of Record 107, where he says, the counsel says, if the court feels comfortable making that determination as to the non-identifiable images of real children, then I really am not interested in making the judge look at all 7,000 or 600, et cetera. He did not want the defendant — was not in the defendant's interest, really, to make the court look through 600, 7,000 images of horrendous pictures. The issue was simply actually a legal one, whether he could make that determination at all. The district court properly said, I could, I can, and did make that determination, and so properly apply the enhancements. I'd like to turn now to the issue of what the appropriate standard of evidence was. This is an issue that the defendant simply did not preserve for appeal. It's a plain-error review because the defendant repeatedly, at the sentencing hearing, cited to the preponderance standard as the appropriate standard of review — of standard of evidence. He made no objection when the court used this or cited this preponderance of the evidence standard. He made no objection when the government counsel did the same. And so the court was not on notice that this was the evidence or this was the standard that he wanted. And had he been given that chance, he easily could have structured or articulated his findings specifically to incorporate whatever standard he found to be applicable. The correct standard in this case is the preponderance standard. Because in U.S. v. Statton, which is the post-Booker case that holds that clear and convincing evidence, may sometimes be still the standard that's applicable in extraordinary circumstances post-Booker, applies only in cases where the facts found in support of guidelines enhancements turn out to have a disproportionate impact on, quote, the ultimate sentence. It has to be actually determinative of the sentence. In a post-Booker world where the guidelines are simply advisory, and clearly this case was a situation where the guidelines calculations, properly calculated though they were, were not actually determinative of the ultimate sentence. The defendant received a 70-month sentence. This was less than half of the enhanced guideline range. And it's very clear from the Court's remarks in imposing the sentence that the sentence was divorced from the enhancements or the guidelines range. Quote, and so rather than sentence you at the statutory maximum, I think, which was the guidelines range, I think that an appropriate sentence in this case is above sort of the 5-year hallmark that I have seen in the course of these kinds of cases and not quite at the statutory maximum. I'm going to sentence you essentially at guideline level 27. This is that excerpt of record 218. I think this clearly shows that under Staten as well as U.S. v. Felix and U.S. v. Dare, all post-Booker cases, that the appropriate standard in this case would be preponderance. Does this Court have any other questions? I don't believe so. If not, then I would submit on the briefs as well as this argument and ask for an affirmance of the sentence. Thank you very much. Thank you, counsel.  Thank you, Your Honor. I first want to address counsel's argument that the issue of the heightened standard was waived. I'd like to invite the Court to consider the December 9th sentencing memo submitted by defense counsel. It's that excerpt of record 89. Under the heading, issues to be presented by the defense at sentencing. And it cites Jordan, and it argues that court must apply the heightened standard, clear convincing evidence at sentencing where there is a disproportionate impact on the sentence. Defense counsel also raised the issue of the heightened standard at the sentencing hearing. That's an excerpt from record 115. He argued for a heightened standard there as well. I want to, in my remaining minute, I want to get back to what the government counsel cited the FBI expert's testimony at the sentencing hearing. Because I think two things are critical. One, that expert testified that he had no idea how that, quote, unquote, that, quote, representative sample was gleaned. In other words, he had no idea how the decision was made to cull the 600 images from the 700 images from the 7,000 to send to NCMEC. That could have been, he conceded, the images that the FBI was actually concerned about. He didn't know how that narrowing occurred, so I think it would be an error to extrapolate from that smaller sample. The second thing that that expert said at the sentencing hearing was that he believed it was possible for a reasonable person to look at these images and determine whether they contained a depiction of an actual child if and only if they were blown up through pixelation. Our expert disagreed. Our expert said, no, even then, you can't make that determination. But it was undisputed, then, that at least a blowing up through pixelation process was required. There's no evidence that the FBI did that in this case. There's no evidence that the district court did that in this case. We ask the sentence be vacated, remand it to the district court. Thank you, Your Honor. Thank you, counsel. We appreciate the arguments. And the case just argued is submitted.
judges: Fletcher B. , Canby, Graber